# Chicago, Burlington and Quincy Railroad Co.

## *v.*

## John W. Siders, Collector.*

1. Taxation—*former decisions.* The decision of this court in *Porter et al.* v. *The Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, *The Republic Life Insurance Co.* v. *Pollak et al.* 75 id. 292, *The Ottawa Glass Co.* v. *McCaleb,* 81 id. 556, and *The Pacific Hotel Co.* v. *Lieb et al.* 83 id. 602, in reference to the taxation of the property of corporations, is reaffirmed.

2. Capital stock—*capital stock—tangible property.* The fact that the State Board of Equalization finds the equalized value of the capital stock of some railroad companies does not exceed the equalized value of their tangible property, thus leaving nothing but the latter upon which to extend taxes, when such assessment is honestly made, and with no fraudulent intent, affords no ground for enjoining the collection of taxes upon another railroad company which is assessed for its capital stock in excess of the value of its tangible property.

3. A railway company can not be heard to object to the payment of taxes on the ground that the board of equalization has failed to assess the value of the road-beds under the rails, including embankments, bridges, culverts, etc., of all railroad companies in the State, as tangible property. The rule, being uniform, can not work to the prejudice of one more than another.

4. The superstructure of a railroad, aside from the franchise to use it for railroad purposes, being of but little or no value, the finding its actual value with the franchise, for taxation, does not afford sufficient evidence of unfairness to justify a court of equity in restraining the collection of taxes levied on such valuation.

5. The courts can not assume, in the absence of proof, that, in all cases, the equalized value of the capital stock of a railroad corporation exceeds the assessed value of its tangible property.

6. Same—*what property of railway companies must be assessed by State board.* The rolling stock and track of railway companies are required to be assessed for taxation by the State Board of Equalization, but all other railroad property is to be assessed by the local assessors, and the State board has nothing to do with its valuation, except as a board of equalization.

7. Whether the valuation of railroad property is represented solely in the valuation of its tangible property, or in the valuation of its tangible property *and* that of its capital stock, can not be regarded as, *per se*, evidence of an unjust and fraudulent discrimination.

* This case was decided as of the January term, 1877, but did not come to the Reporter's hands in time to be published with the cases of that term.

8. SAME—*not enjoined for errors of judgment.* The collection of a tax will not be enjoined simply because of errors of judgment in the assessors, nor from the fact that the assessment is not strictly and literally, in all respects, according to the letter of the law.

9. SAME—*grounds of equitable interference.* To warrant an injunction against the collection of a tax, it must appear clearly, from allegations and proofs, that the assessment works such an injury as a court of equity alone is competent to redress,

APPEAL from the Circuit Court of McDonough county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding,

Mr. O. H. BROWNING, for the appellant.

Mr. JAMES K. EDSALL, Attorney General, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

The questions discussed upon this record relate to the validity of the assessment of appellant's capital stock for taxation, by the State Board of Equalization, for the year 1875.

The case involves, directly, only the taxes sought to be collected of appellant in the county of McDonough; but the questions are equally applicable wherever taxes are sought to be collected of appellant on that assessment.

Elaborative and exhaustive arguments of the questions contested have been made orally and in printed briefs; and it would be due to counsel that we should give an extended and careful expression of our views upon every phase of these questions, were time to that end afforded us, and were it not, also, that, in previous cases, we have said all that, in our opinion, need be said in reference to some of them. As it is, we feel constrained to notice only such questions as have not been heretofore decided in kindred cases, and to give our conclusions thereon as lucidly as we can under the pressure and hurry by which we are driven in consequence of the rapid accumulation of cases upon our dockets.

The arguments in support of the objections, that the assessment of the State Board of Equalization was of the shares of stock, and not of the property of the corporation; that if the

21—88 ILL.

assessment shall be held to be that of the property of the corporation, it is a double and unequal assessment, and that if the tax is to be regarded as a franchise tax, it can not be sustained,—present nothing new to us, save the very ingenious and forcible manner of their presentation. Like objections were urged, and pressed upon our attention in able arguments, but overruled, in *Porter et al.* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, and other cases depending on that for decision—in *Republic Life Insurance Co.* v. *Pollak,* 75 id. 292, *Ottawa Glass Co.* v. *McCaleb,* 81 id. 556, and in *Pacific Hotel Co.* v. *Lieb,* 83 id. 602. The same objections, in substance, were also urged in the Supreme Court of the United States, but disregarded, in *The State Railroad Tax Cases,* 2 Otto (92 U. S.), 575.

There is nothing in the record before us, so far as relates to these objections, variant from the records in those cases; and the questions presented by these objections can, therefore, no longer be considered as open to discussion.

It is charged in the bill, "that the State Board of Equalization wrongfully and fraudulently, and intentionally, failed and refused to assess, by valuation, any portion of the tangible property of forty of the railroad corporations of the State, which underlies the rails upon the roads, including bridges and culverts, but left it unassessed by valuation, under the pretense of intending to include it in the capital stock and franchises of said companies, respectively, and then wrongfully, fraudulently and intentionally failed and refused to make any assessment whatever against said forty railroad companies for capital stock and franchises, or either of them, so that said forty companies were, by the action of said State board, released and discharged from any taxation upon their capital stock and franchises, and upon all their tangible property which underlies the rails upon their roads, including culverts and bridges."

The answer admits "that, in assessing railroad track and right of way, the State Board of Equalization did not take

into consideration the improvements beneath the ties and iron, or superstructure, but excluded such improvements from their assessment, to be included under the designation of 'capital stock.'" It also admits "that there is a large number of railroad corporations in the State against which no assessment was made by the State board for capital stock for 1875," but alleges "that, as appears by exhibit 'A,' filed with the bill, the total ascertained value of all the capital, property and franchises of the companies did not exceed the assessed and equalized value of their tangible property." It denies "that the State board fraudulently and wilfully disregarded the laws, and the rules adopted by the board, with the purpose of compelling appellant to pay taxes out of proportion to the value of its property, and in excess of the proportional taxation of other railroad corporations in the State;" and generally denies all fraud charged in the bill.

The only important evidence introduced on the issue thus raised, that is competent, is that contained in the published report of the proceedings of the State Board of Equalization, and a stipulation of the parties filed with the record. It appears, by the stipulation, that, in 1873, the Auditor of Public Accounts, in answer to an inquiry addressed to him by the State Board of Equalization, gave the opinion "that the law does not contemplate the assessing of the cost of construction, or grading, as any part of the property denominated 'railroad track,' in section 42 of the revenue law; but that the value resulting from, or belonging to, such grading can only be legally and equitably ascertained in the assessment of capital stock of any railroad company;" and that the board adopted, and made the assessments for that year in conformity with, such opinion of the Auditor. It is then stipulated "that the same board made the assessment in 1875, and pursued the same plan in respect to the exclusion of the cost of the grading and improvements of the road-bed beneath the iron from their consideration, in the assessment of the railroad track, under

the supposition that it could be more fairly and justly reached, in the assessment, under the designation of 'capital stock.'"

The mode of valuation of capital stock adopted by the board was the same as that in the preceding cases decided by this court, to which we have made reference—the resolutions prescribing which are set forth at length in *Porter et al.* v. *Rockford, Rock Island and St. Louis R. R. Co.* 76 Ill., at pages 586-7. And it appears that, as to a number of railroad companies, the board determined that the assessed and equalized value of the capital stock did not exceed the assessed value of the tangible property; and so there is nothing upon which to extend the taxes, as against such corporations, except upon the equalized assessed value of the tangible property. There is no evidence, other than what may be found in this action of the board, tending to prove fraud.

Since the value of the bridges, culverts, embankments, etc., forming the superstructure of the track, is represented, as is everything else of value belonging to the corporation, in the value of its capital stock, and since appellant's road is treated like every other road in the State, in having such property excepted from assessment as tangible property, it is impossible to see how appellant is injured by this action of the board. It is not shown that the valuation of appellant's capital stock is larger than it would have been had the superstructure been assessed as tangible property, and its value then deducted from the equalized value of its capital stock, nor are we able to perceive how, otherwise, it must necessarily have prejudiced appellant.

The superstructure, aside from the franchise to use it for railroad purposes, could have but little value, if any at all; and since its actual value as a part of a particular railroad is the value to be ascertained for taxation, it is impossible to discover, in the mode of valuation adopted, sufficient evidence of unfairness or injustice, either towards railroad corporations or individuals, to justify the interposition of a court of equity.

If it had been shown that the action of the board of equali-

zation, in ascertaining that the equalized value of the capital stock, including the franchise, of certain railroad companies did not exceed the assessed value of their tangible property, resulted from a fraudulent disposition to exempt the property of such corporations, a different and more difficult question would be presented than that before us; but it is not conceded that even that would render void the entire assessment.

But we are not to assume that, in all cases, the equalized value of the capital stock must exceed the assessed value of the tangible property. There is no evidence that supports such a view, and we can readily conceive that, in many cases, it might not be so. The *actual* value of the capital stock must always exceed the *actual* value of the tangible property by some amount,—it may be very great or very small,—accordingly as is the value of the franchise. But *actual* values and *assessed* values, we all know from experience, are quite different terms.

Rolling stock and railroad track, as well as capital stock, are to be assessed by the State Board of Equalization, but all other railroad property is to be assessed by local assessors; and the board of equalization has nothing to do with its valuation, except as a board of equalization.

When it is remembered that it is impossible for any human agency to ascertain valuations, at all times, with entire accuracy, it must be evident that it may frequently, and yet honestly, happen, that the valuation placed on tangible property, when it is assessed as such, does not correspond with the amount the tangible property represents in the valuation of the capital stock, as determined by the board of equalization. When this happens, the necessary effect is to increase or diminish, in proportion to the want of such correspondence, the difference between the assessed value of the tangible property and the valuation of the capital stock. And if the tangible property, when assessed as such, is valued, relatively, too high, by an amount equal to or in excess of all other values belonging to the corporation, there can be nothing

remaining, under the designation of capital stock, on which to levy taxation, after deducting the assessed value of the tangible property. Yet, in such case, it would not be entirely correct to say the other values are not taxed, for they would, in a certain sense, be represented and taxed in the taxation imposed on the excessive valuation of the tangible property.

If the tangible property, when assessed as such, is valued relatively too low, then, when the amount of such valuation is deducted from the valuation of the capital stock, as determined by the board of equalization, there will remain, of necessity, in addition to the valuation of whatever other property may be represented in the capital stock, an amount equal to that which the assessed value of the tangible property falls below the amount that property represents in the valuation of the capital stock.

The effect, therefore, of the deduction of the assessed value of the tangible property, is both to avoid double assessment and to equalize the different valuations.

Whether the valuation of railroad property is represented solely in the valuation of its tangible property, or in the valuation of its tangible property *and* that of its capital stock, we can not regard as, *per se,* evidence of an unjust and fraudulent discrimination, since, in our opinion, under certain circumstances the valuation might, without intentional unfairness, be returned in the one way, while, under different circumstances, it should be in the other way; and either, under the circumstances to which it is appropriate, would, in the absence of other evidence than that of the mere fact that the valuation was so returned, be a sufficiently accurate approximation of value to form the basis of taxation.

It results, that we do not feel justified in holding appellant's assessment fraudulent and void, from the simple fact that a number of other corporations are returned as having nothing taxable beyond the assessed value of their tangible property. As has been seen, the value of their franchises, and other property not assessed as tangible property, may be represented

in the excessive valuation of their tangible property beyond its ratable proportion, when compared with the valuation of their capital stock, as determined by the board of equalization, and if this be true, it will be sufficiently subject to taxation; or it may be, in point of fact, their franchises, and other property not included in the assessment of the tangible property, were only of nominal value, and if this be true, no one is prejudiced by the return.

It is not our province to determine the wisdom or entire accuracy of this assessment. It is, doubtless, liable to grave objections on both these grounds. But this court has repeatedly held, that the collection of a tax will not be enjoined simply because of errors of judgment in the assessors. Nor is the fact that the assessment is not strictly and literally, in all things, according to the letter of the law, ground for equitable intervention. Equitable, not legal, relief is sought by the bill, and to warrant the injunction against the collection of the tax, it should appear, clearly, from the allegations and proofs, that the assessment works such an injury to appellant as a court of equity alone is competent to redress.

Such a case, in our opinion, is not made out, and the decree must, therefore, be affirmed.

*Decree affirmed.*